INTERNATIONAL FIDELITY INSURANCE COMPANY, Plaintiff,

v.

COUNTY OF ROCKLAND, SWCF Architects Engineers Planners, Maniktala Associated, P.C., and Fidelity and Guaranty Insurance Company, Defendants.

No. 97 Civ. 3711(CM).

United States District Court, S.D. New York.

May 24, 1999.

Thomas J. Demski, Skills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., New York City, for International Fidelity Insurance Company, plaintiff.

Gregory E. Ronan, Goddard, Ronan & Dineen, New York City, for County of Rockland, defendant.

Cecil Holland, Jr., Hart & Hume, New York City, for Fidelity and Guaranty Insurance Company, defendant.

DECISION GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR A DECLARATORY JUDGMENT AND ENJOINING DEFENDANT SWCF FROM ADJUDICATING THE DELAY DAMAGES DISPUTE

McMAHON, District Judge.

This matter comes before the Court in a somewhat unusual posture. Plaintiff In-

ternational Fidelity Insurance Company ("IFIC") has moved by order to show cause for a permanent (not preliminary) injunction preventing Defendant SWCF Architects Engineers Planners ("SWCF") from determining a dispute submitted to it by defendant County of Rockland in its capacity as Project Architect under a construction contract for the build-out of the ninth floor of the Dr. Robert L. Yeager Health Center. IFIC, which started as the surety for one NANCO, the original construction contractor, and which eventually took over the construction contract after NANCO's default, seeks to enjoin SWCF from adjudicating the parties' dispute over delay damages on two grounds: first, that the claims resolution clause pursuant to which the matter was submitted to the Project Architect does not encompass a dispute over post-completion delay damages; and second, that even if it does, the County's claim was not submitted to the Project Architect for decision within 21 days after it arose, as required by the claims resolution clause.

IFIC is correct on both counts, and has therefore shown that it can succeed on the merits of its claim that SWCF is not empowered to decide the County's claim for delay damages (which the County has also asserted as a counterclaim in this action). It is therefore entitled to summary judgment on its Second Claim for Relief, in which it seeks a declaration that the Project Architect claims resolution procedure does not apply in this case, and a permanent stay (or injunction) of any proceeding before SWCF.

## BACKGROUND

The parties have submitted huge amounts of documentation to the Court in support of and in opposition to this motion.

I make the following findings of fact, all of which are undisputed.

In February 1994, Rockland County issued a contract for the build-out of the ninth floor of the Dr. Robert L. Yeager Health Center, a County-owned nursing facility in Pomona, New York. NANCO was selected as construction contractor. Under the contract, construction was to be substantially completed within 180 days, or by August 8, 1994. The contract that NANCO and the County entered into contained, among other things, a claims resolution clause, which reads as follows:

4.4.2 Decision of Architect/Engineer. Claims,[1] including those alleging an error or omission by the Architect/Engineer, shall be referred initially to the Architect/Engineer for action as provided in Paragraph 4.5. A decision by the Architect/Engineer, as provided in Subparagraph 4.5.4, shall be required as a condition precedent to litigation of a Claim between the Contractor and Owner as to all such matters arising prior to the date final payment is due, regardless of (1) whether such matters relate to execution and progress of the Work or (2) the extent to which the Work has been completed. The decision by the Architect/Engineer in response to a Claim shall not be a condition precedent to litigation in the event (1) the position of Architect/Engineer is vacant, (2) the Architect/Engineer has failed to render a decision within agreed time limits, (3) the Architect/Engineer has failed to take action required under Subparagraph 4.5.4 within 60 days after the Claim is made, (4) 90 days have passed after the Claim has been referred to the Architect/Engineer or (5) the Claim relates to a mechanic's lien.

---

**1.** Section 4.4.1 of the Contract states: "A claim is a demand or assertion by one of the parties seeking ... adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim."

Construction Contract, attached as Ex. 5 to Aff. of Americo Tiso, at § 4.4.2.

Under the terms of the Contract, NANCO was required to post payment and performance bonds to secure the construction project. IFIC stood surety under those bonds. Pursuant to the performance bonds, IFIC had the right, in the event of default, to arrange for NANCO to complete the contract, obtain bids from qualified contractors acceptable to the County for completion of the contract, take over the contractor's obligations under the Construction Contract and complete performance, or waive its right to perform and complete and tender the amount due to the County. *See* Performance Bond, attached as Ex. 6 to Aff. of Americo Tiso, at ¶ 4. As surety, IFIC was not a party to the underlying Construction Contract, and IFIC was granted the explicit right to bring suit on any matter involving its obligations as surety. *See* Performance Bond, attached as Ex. 6 to Aff. of Americo Tiso, at ¶ 9.

When it became clear that NANCO would be unable to complete the Project in a timely manner, IFIC exercised its option to step into the Construction Contractor's shoes. Accordingly, it executed a Takeover Agreement, pursuant to which IFIC agreed to complete the contract in exchange for receipt of the payment of the remaining proceeds under the Construction Contract. The Takeover Agreement provided that all the terms of the underlying Construction Contract (including, necessarily, the claims resolution clause quoted above) were incorporated into the Takeover Agreement by reference. *See* Takeover Agreement, attached as Ex. E to the Complaint, at ¶ 1. It also provided that nothing in the Takeover Agreement affected any of IFIC's rights as surety under its payment and performance bonds (including, necessarily, its right to have disputes arising under those bonds determined by a court of law).

IFIC engaged one Harani Contracting Corporation ("Harani") to complete the Project. Unfortunately, Harani proved unable to get the work done within the Completion Contract period. The County did not default IFIC and continued to pay under the Construction Contract through the Spring of 1995. Even after the County ceased payment in May 1995, IFIC and Harani continued work, and the Project was accepted as substantially complete by SWCF, as the County's representative, on October 5, 1995. Harani thereafter ceased work on the Project and filed for bankruptcy protection. The County defaulted IFIC on March 6, 1996, but ultimately permitted it to return to the Yeager Center and complete the Project with yet another contractor. The ninth floor was accepted as complete on January 24, 1997.

On September 14, 1995, shortly before substantial completion, Rockland County served IFIC with a "Notice of Claim" for alleged delay damages totaling $4,554,735. The Notice of Claim stated that the County "intended" to submit the matter to SWCF, but the County did not submit the matter for decision to the Project Architect at that time. By letter to counsel for the County, dated October 31, 1995, IFIC denied that the question of delay damages was one properly submissible to the Project Architect, and further contended that the County had failed to submit the claim within 21 days after it arose. Rockland County neither responded to these contentions nor sent the matter to SWCF until April 1, 1997, after final completion of the Project, when it served IFIC with a more detailed analysis of claim and forwarded the matter to the Project Architect for resolution.

IFIC then brought this proceeding, seeking compensatory damages against the County for monies alleged to be due under the Takeover Agreement and a declaratory judgment that, among other things, the claims resolution procedure set forth in the Contract is inapplicable to it.[2]

**2.** The County of Rockland has filed counter-

claims in this action, one of which seeks

IFIC also joined SWCF as a party defendant, and has moved by order to show cause for a permanent injunction against resolution of the delay damages issue by the Project Architect, on the grounds previously asserted. The parties agreed to a standstill until this Court decided the application for an injunction on that discrete issue.[3]

## DISCUSSION

Regardless of the way in which IFIC has styled this application, plaintiff's request is, in effect, a motion for summary judgment on its claim for a declaratory judgment that the claims resolution clause in the Construction Contract does not apply to the County's delay damages claim against.it. IFIC is seeking a final resolution of that question and a declaration that has the effect of permanently enjoining SWCF from adjudicating the matter. The issue presented is one of contract construction, which is purely a question of law, and all the necessary papers are before the Court. Defendants have not objected to IFIC's application on the ground that this claim is not ripe for final determination; indeed, both parties have asked this Court to determine this discrete question. Therefore, I will treat the motion as what it is—a motion for summary judgment on IFIC's Second Claim for Relief.

■ IFIC first asserts that the question of delay damages cannot be submitted to the Project Architect because it is not bound in any manner, shape or form by the claims resolution clause contained in § 4.4.2 of the Construction Contract. In this, IFIC is not correct. When it signed the Takeover Agreement, which incorporated all the terms of the underlying Construction Contract by reference, IFIC bound itself to send all disputes that fall under §§ 4.4.1 and 4.4.2 of that Contract to the Project Architect for his review.[4]

■ That does not, however, resolve the question of whether the delay damages dispute that underlies this action should be resolved by SWCF in the first instance, as the County contends. IFIC claims that the question of delay damages is not encompassed by the Project Architect claims resolution clause in the Construction Contract, both as a matter of fact and as a matter of law. IFIC also argues that the matter of delay damages cannot be decided by the Project Architect, even if it falls within the ambit of that clause, because Rockland County did not submit the dispute to SWCF within 21 days of the time when the dispute arose or when it first became aware of the matter giving rise to the dispute (whichever is later), as required by § 4.4.3 of the Construction Contract. IFIC further contends that, even if the issue was timely submitted, the failure of the Project Architect to take action on the matter within sixty days after the claim was first made removes any obligation on IFIC's part to await a decision by SWCF as a condition precedent to litigation. *See* Construction Contract, attached as Ex. 5 to Aff. of Americo Tiso, at § 4.4.2.

The question submitted to the Court can be resolved strictly on the basis of the timeliness issues and the language of the Construction Contract. Rockland County takes the position that it "made" the claim

$5,000,000 as damages for delay in completion of the Project. Defendant and third-party plaintiff Fidelity and Guaranty Insurance Company (formerly United States Fidelity and Guaranty Corporation), supports the motion .by IFIC to enjoin a claims resolution proceeding by SWCF, and has filed a third-party claim against Harani Engineering P.C., Sarita J. Hirani and Jitendra S. Hirani.

3. IFIC has joined Fidelity & Guaranty Insurance Company (formerly USF & G), believing it to be a necessary party under Federal Rule of Civil Procedure 19(a). IFIC demanded judgment against Fidelity & Guaranty, as surety and subrogor to Harani, for any and all liability in connection with the failure of Harani to perform satisfactorily under the Completion Contract.

4. Under § 4.4.2, submission of certain matters to the Project Architect is a "condition precedent to litigation."

on September 14, 1995, when it served IFIC (but not the Project Architect) with a notice of claim for over $4 million in delay damages. If I accept the County's position, I can only conclude that the County is hoist on its own petard. Pursuant to § 4.4.2 of the Construction Contract, "[t]he decision by the Architect/Engineer in response to a Claim shall not be a condition precedent to litigation in the event . . . the Architect/Engineer has failed to take action required under Subparagraph 4.5.4 within 60 days after the Claim is made. . . ." Sixty days after September 14 is November 13, 1995, and there can be no dispute that the Project Architect had not taken action on the Claim by that date. Indeed, it appears undisputed on the record before me that Rockland County had not even sent the matter to SWCF for a determination at that point. Therefore, by the express terms of the Construction Contract (as incorporated into the Takeover Agreement), as of November 14, 1995, IFIC was freed from any restriction that may have limited its right to have a court determine whether the County is owed delay damages.

■ If, on the other hand, I were to accept IFIC's contention that the claim was not actually made until the dispute over delay damages was submitted to SWCF for resolution, then the conclusion that it was made too late is inescapable. The County has asserted, in a brief to this Court, that it first became aware that it had a claim for delay damages on September 12, 1995. *See* County of Rockland's Brief in Opposition to Plaintiff's Application for Permanent Injunctive Relief, at p. 15. Section 4.4.3 of the Construction Contract gave it 21 days from that date to submit the claim to the Project Architect for resolution under the alternative dispute resolution clause. There is no dispute that the information needed to resolve the dispute was not sent to SWCF until the Spring of 1997. That falls well beyond the brief limitations period agreed to by the

original parties to the Construction Contract.

■ Rockland County of course protests that it could not assess the full amount of the delay damages until sometime after January 1997, when the Project was finally completed. But that is of no moment. Indeed, it only reinforces IFIC's other argument, which is that the parties to the Construction Contract never intended that disputes over delay damages be resolved by the Project Architect. The claims resolution clause in the parties' Construction Contract is a fairly standard device that has arisen in the construction industry to effect a quick resolution of disputes that arise *during construction* and that might cause delay if they are not taken care of immediately. New York courts examining such clauses have rejected the notion that project architects are empowered to resolve delay damages disputes. *See, e.g., Liebhafsky v. Comstruct Assocs., Inc.,* 62 N.Y.2d 439, 440, 466 N.E.2d 844, 844, 478 N.Y.S.2d 252, 252 (1984) (noting that the authority of the architect under such a clause was "centered on the operational phases of construction . . . and thus a claim for delay damages, asserted some two years after substantial completion of the project and occupation of the building need not be submitted to the architect. . . ."); *County of Rockland v. Primiano Constr. Co.,* 51 N.Y.2d 1, 11, 409 N.E.2d 951, 956, 431 N.Y.S.2d 478, 484 (1980) ("[C]laims, disputes and other matters in question between the Contractor and the Owner which must first be referred to the architect are those relating to the execution or progress of the Work. . . . Claims asserted after substantial completion of the work do not fall within the scope of [the duties of the architect]."); *Tsombikos v. Brager,* 147 Misc.2d 995, 999, 559 N.Y.S.2d 460, 462 (N.Y.Sup.Ct.1990) (where claims were made subsequent to the termination of contractor's role as a contractor, architect's responsibility to supervise the contractor's performance and,

by extension, initially mediate his disputes, was at an end).

Delay damages claims, by their nature, arise after the construction project is complete—a time when the architect has ceased to be responsible for supervising the contractor's performance. *See Liebhafsky,* 62 N.Y.2d at 440, 478 N.Y.S.2d 252, 466 N.E.2d 844; *Primiano,* 51 N.Y.2d at 11, 431 N.Y.S.2d 478, 409 N.E.2d 951; *Tsombikos,* 147 Misc.2d at 999, 559 N.Y.S.2d 460. Rockland County is well aware of this because it was on the losing end of the *Primiano* case, in which the New York Court of Appeals specifically held that the project architect was not empowered to resolve a post-completion delay damages claim submitted to it by the County. *Primiano,* 51 N.Y.2d at 11, 431 N.Y.S.2d 478, 409 N.E.2d 951. Thus, even if the County had timely submitted its claim against IFIC to SWCF—which I have concluded it did not—the contract, by its terms, does not authorize SWCF to hear the delay damages dispute.

IFIC's claim for a declaratory judgment is granted, and SWCF is enjoined from entertaining the County's claim. The County is, of course, free to pursue delay damages by way of its counterclaim for such in this Court.

Through no fault of the parties, this case has languished in this Court for almost two years. I attach to this decision a Civil Case Management Order that will ensure that it languishes no longer.

This constitutes the decision and order of the Court.